UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALISA MICHELLE FORD,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | No.  2:13-cv-2245-EFB<br><br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.  The parties have filed cross-motions for summary judgment.  For the reasons that follow, plaintiff's motion is denied and the Commissioner's motion is granted.

I.      BACKGROUND

Plaintiff filed applications for a period of disability, DIB, and SSI on October 25, 2011, alleging that she had been disabled since January 1, 2004.  Administrative Record ("AR") 93, 172-189.  Plaintiff's applications were denied initially and upon reconsideration.  *Id*. at 117-121, 124-129.  On May 30, 2013, a hearing was held before administrative law judge ("ALJ") Evangelina P. Hernandez.  *Id*. at 26-76.  Plaintiff was represented by counsel at the hearings, at which she, a third-party witness, and a vocational expert ("VE") testified.  *Id*.

/////

On July 19, 2013, the ALJ issued a decision finding that plaintiff was not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Act.[1] *Id.* at 10-20. The ALJ made the following specific findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.

2. The claimant has not engaged in substantial gainful activity since October 1, 2011, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

   * * *

3. The claimant has the following severe impairments: bipolar disorder and depression (20 CFR 404.1520(c) and 416.920(c)).

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq.* Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq.* Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Yuckert*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

\* \* \*

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

\* \* \*

5. After careful consideration of the entire record, the undersigned find that the claimant has the residual functional capacity to perform a fully range of work at all exertional levels but with the following nonexertional limitations: She is limited to simple work, defined in the Dictionary of Occupational Titles (DOT) as SVP levels 1 and 2, routine and repetitive; she needs to work in a low stress job defined as involving only occasional decisions making and occasional changes in the work setting; she can have occasional interaction with the general public; and the work can be around co-workers throughout the day, but with only occasional interaction with co-workers.

\* \* \*

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

\* \* \*

7. The claimant was born on June 24, 1970 and was 33 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claim has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

\* \* \*

/////

/////

> 11. The claimant has not been under a disability, as defined in the Social Security Act, from October 1, 2011, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

*Id.* at 12-20.

The Appeals Council denied plaintiff's request for review on August 28, 2013, leaving the ALJ's decision as the final decision of the Commissioner. *Id*. at 6.

## II.   LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

## III.   ANALYSIS

Plaintiff argues that the ALJ erred in (1) rejecting his treating physician's opinion without providing legally sufficient reasons, and (2) rejecting third-party statements without a legitimate reason. ECF No. 17 at 13-20.

/////

A. <u>The ALJ Provided Legally Sufficient Reasons for Rejecting the Opinion of Plaintiff's Treating Physician</u>

Plaintiff challenges the ALJ's rejection of the medical opinion from Dr. Susan Andrews, plaintiff's treating physician. ECF No. 17 at 13-17. The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1295 (9th Cir. 1996). To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons, that are supported by substantial evidence. *Id.* at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (*e.g.,* supported by different independent clinical findings), the ALJ may resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). However, "[w]hen an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'" *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

Dr. Andrews submitted a Complete Medical Report (Mental) indicating that she had been treating plaintiff since July 10, 2012. AR at 491. She diagnosed plaintiff with Bipolar I mixed, Borderline Intellectual Functioning, and Post Traumatic Stress Disorder ("PTSD"). *Id*. Dr. Andrews opined that plaintiff had a poor ability to follow work rules, relate to co-workers, deal with the public, interact with supervisors, use judgment, deal with work stress, function independently, and maintain attention/concentration. *Id*. at 492. She further opined that plaintiff had a poor ability to understand, remember, and carry out simple job instructions; behave in an

5

1   emotionally stable manner; relate predictably in social situations, demonstrate reliability, but a
2   good ability to maintain personal appearance. *Id*. at 494.

3   Dr. Anderson explained that plaintiff has marked memory loss, poor concentration and
4   focus, and a short term attention span, resulting in an inability to learn or retain new information.
5   *Id*. at 493. Plaintiff also has paranoia that results in isolation, difficulty leaving the house, panic
6   attacks, helplessness and hopelessness. *Id*. She noted that plaintiff is also irritable, angry with
7   hostile outbursts, and has exhibited inappropriate sexual advances towards strangers, all resulting
8   in an inability to appropriately interact with co-workers, supervisors, and the public. *Id*. Dr.
9   Andrews further stated that due to her mental impairments, plaintiff forgets to adjust her
10  medication based on whether she is depressed or manic, and she needs constant reminders to
11  adjust her medication. *Id*.

12  Plaintiff also underwent a comprehensive psychiatric evaluation, which was performed by
13  Dr. Silvia Torrez, Doctor of Psychology. *Id*. at 367-375. Dr. Torrez diagnosed plaintiff with
14  adjustment disorder with depressed mood, and found that plaintiff's psychological symptoms
15  were in the mild range. *Id*. at 373. She concluded that despite plaintiff's reported symptoms,
16  plaintiff was not suffering from a major mental disorder. *Id*. at 374. Dr. Torrez opined that
17  plaintiff had no limitations in understanding and remembering detailed instruction, accepting
18  instructions from supervisors, maintaining attention and concentration, and completing a normal
19  workday and workweek without interruption. *Id*. It was also her opinion that plaintiff could deal
20  with changes in the work setting, interact with coworkers, and that the likelihood of plaintiff's
21  emotionally deteriorating in work environment was minimal. *Id*. at 374. Thus, Dr. Torrez opined
22  that plaintiff did not have any metal impairments that would impact her ability to work.

23  In finding that plaintiff was not disabled, the ALJ gave great weight to Dr. Torrez's
24  opinion, while giving little weight to Dr. Andrews's treating opinion. *Id*. at 17-18. As Dr.
25  Andrews's opinion was contradicted by Dr. Torrez's opinion, the ALJ was required to provide
26  specific and legitimate reasons for discounting the treating opinion.

27  The ALJ gave a single reason for rejecting Dr. Torrez's treating opinion: the "opinion is
28  not supported by the underlying treatment records, . . . which indicate that the claimant's

1  symptoms are generally stable on medication." *Id*. at 18.  An ALJ may reject a treating

2  physician's opinion that is inconsistent with the physician's own treatment notes.  *Tommasetti v.*

3  *Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

4      Dr. Andrews's treatment notes from plaintiff's initial visit in July 2012 indicate that

5  plaintiff was cooperative, her affect was congruent, speech was clear, thought content was

6  normal, she was oriented to time place and purpose, attention was fair, and she had no memory

7  problems.  *Id*. at 476-477.  Plaintiff reported feeling depressed, detached and unemotional, and

8  stated that she had experienced mood swings and some mania symptoms.  474, 477.  She also

9  reported seeing a male silhouette in her living room at night and that voices would tell her to

10 spend money when she was under stress.  *Id*. at 477.

11     Treatment notes from September 10, 2012, indicate that plaintiff's hygiene and grooming

12 was good, her thought process was linear, there was no psychosis, her affect was pleasant, and

13 there were no suicidal ideations or hallucinations.  *Id*. at 472.  In November 2012, plaintiff

14 reported having difficulty focusing and experiencing short term memory loss.  *Id*. 471.  Her

15 hygiene and grooming was good, thought process was linear, speech was within normal limits,

16 and her affect was flat but pleasant.  *Id*.  Dr. Andrews noted that plaintiff was stable on her

17 medication.  *Id*.  In January 2013, plaintiff reported feeling happy for one week, but then "it

18 stopped."  *Id*. at 470.  Plaintiff reported being irritable, lacking confidence, and being less

19 talkative.  *Id*.  She was depressed, but negative for mania.  *Id*.  Her hygiene and grooming was

20 good, speech was soft but within normal limits, thought process was linear, and affect pleasant.  It

21 was noted that plaintiff had minimal mood changes and was stable on lithium.  *Id*.  Treatment

22 notes from February 2013 indicated that plaintiff had improved mood on her medication.  *Id*. at

23 463.

24     In March 2013, plaintiff was hypomanic and hypersexual, and plaintiff reported having

25 inappropriate sexual encounters with strange men.  *Id*. at 501.  Plaintiff's speech was within

26 normal limits, thought process was linear, and her affect was pleasant.  *Id*.  Plaintiff was

27 instructed on how to adjust her medications depending on whether she felt depressed or manic.

28 *Id*.  In May 2013, plaintiff reported that she had stopped taking her lithium and was controlling

1    her mania and sexual urges by staying busy. *Id*. at 498.  She reported volunteering and attending
2    parenting and skills building groups. *Id*.  Dr. Andrews again indicated that plaintiff was stable
3    while on her medication. *Id*. at 498.

4    　　　As discussed above, Dr. Andrews opined that plaintiff had poor ability to perform all
5    work-related functions, with the exception of having a good ability to maintain personal
6    appearance. *Id*. at 491-496.  While Dr. Andrews's treatment records demonstrate some level of
7    impairment caused by plaintiff's bipolar disorder, an impairment that the ALJ found to be severe,
8    the ALJ logically concluded that Dr. Andrews's treatment notes did not support the extreme
9    limitations she assessed.  Indeed, treatment notes indicated that plaintiff experienced improved
10   mood on medication and was stable on her medication.  While plaintiff reported feeling
11   hypomanic in March 2013, *id*. at 498, she stated in May that she was able to control her mania by
12   staying busy, *id*. at 498.  The ALJ permissibly concluded that these treatment records were
13   inconsistent with Dr. Andrews's extreme opinion.  *See Marci v. Chater*, 93 F.3d 540, 544 (9th
14   Cir. 1996) ("[T]he ALJ is entitled to draw inferences 'logically flowing from the evidence.'").
15   　　　Accordingly, the ALJ provide a legally sufficient reason for rejecting Dr. Andrews's
16   opinion.

17   　　　　　B.  <u>The ALJ did not Err in Rejection Third-Party Statements</u>
18   　　　Plaintiff also contends that the ALJ failed to adequately address third-party statements
19   from Bruce Jones, plaintiff's case worker, and Beatrice Spenser, plaintiff's daughter.  ECF No. 17
20   at 17-20.  Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must
21   take into account, unless he expressly determines to disregard such testimony and gives reasons
22   germane to each witness for doing so.  *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).  An ALJ
23   must consider this testimony in determining whether a claimant can work.  *Stout v. Comm'r of*
24   *Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006); *see also* 20 C.F.R. § 416.913(d)(4);
25   *Smolen*, 80 F.3d at 1288.  However, in doing so the ALJ is free to evaluate that testimony and
26   determine the appropriate weight it should be given in the light of other evidence.  To discount
27   the testimony of a lay witness, the ALJ must "give reasons that are germane to each witness." *Id*.
28   at 1053; *see also Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009).

At the May 30, 2013 hearing, Mr. Jones testified that he had known plaintiff for nine months. AR 56. He stated that plaintiff had a history of giving her food away to other people even though she and her child would be left without anything to eat. *Id*. at 57. He also noted that the difference between plaintiff's mental condition nine months ago and the date of the hearing was "like night and day," but that plaintiff still had a long way to go. *Id*. at 62-63. He stated he regularly witnessed the depression and mania associated with plaintiff's bipolar disorder. As an example, he stated that plaintiff would be acting manic and when someone would bring her behavior to her attention, she would "go to the other extreme" and become depressed. *Id*. at 63.

Plaintiff's daughter, Ms. Spencer, completed a Third Party Function Report. *Id*. at 237-243, 246. She stated that she would visit plaintiff at least twice a week to socialize or help cook and clean. *Id*. at 237-238. She reported that plaintiff cares for her nine-year old son, who is able to help out around the house. *Id*. at 238. Ms. Spencer stated that plaintiff could cook microwavable meals, prepare sandwiches, and dress and bathe herself when she was not depressed. *Id*. at 238-239. She stated that plaintiff has no hobbies, spends a lot of the day lying down, and "she has no interest in anything." *Id*. at 241. She also noted that plaintiff is "afraid of simple things. Stays depress[ed]. Has crying spells. Lack[s] sleep. Has to take medicine to cope with racing thoughts." *Id*. at 243.

The ALJ discussed Mr. Jones and Ms. Spencer's statements and found that they were "not fully credible because they are not consistent with or supported by the objective evidence." *Id*. at 18. An ALJ may reject lay opinion evidence where it is inconsistent with the medical evidence of record. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (holding that inconsistency with medical evidence is a germane reason for discrediting lay witness testimony); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) ("One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence."). As explained above, plaintiff's treatment record does not support the finding that plaintiff experienced debilitating mental impairments. Accordingly, the ALJ properly relied upon the inconsistency between Mr. Jones and Ms. Spencer's statements and the medical records in giving reduced weight to their statements.

/////

IV. <u>CONCLUSION</u>

The ALJ's applied the proper legal standard and her decision is supported by substantial evidence. Accordingly, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment is denied;
2. The Commissioner's cross-motion for summary judgment is granted; and
3. The Clerk is directed to enter judgment in the Commissioner's favor.

DATED: March 19, 2015.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE